**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | |
|---|---|
| BARON D. MITCHELL | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. |
| PLUMBERS AND STEAMFITTERS LOCAL UNION NO. 157, | ) |
| Defendant | ) 2:08-cv-0230 RLY-WGH |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
AND REQUEST FOR TRIAL BY JURY**

Plaintiff, Baron D. Mitchell (hereinafter "Mitchell"), by his counsel, for his cause of action against the defendant, Plumbers and Steamfitters Local Union No. 157 (hereinafter "Local 157"), states as follows:

### I. STATEMENT OF THE CASE

Mitchell brings this race discrimination action against his labor union, Local 157 pursuant to the Civil Rights Act of 1866, 42 USC § 1981. His complaint is based, in large part, upon two very serious incidents of racial discrimination and harassment against Mitchell by fellow Caucasian members of Local 157. Mitchell reported both of these incidents of racial harassment to Local 157. In both cases, Local 157 refused to take action to discipline the racist members or to protect Mitchell from race discrimination. However, in both instances, Local 157 instead acted to pull Mitchell from the jobs he was working on (or allow him to be fired), to Mitchell's detriment. Mitchell has been intimidated and harassed because of his race, causing his labor

1

union to be, for him, a racially hostile environment. These racial attacks on Mitchell by fellow members of Local 157 include 1) a noose, 2) racial slurs, 3) racial graffiti, 4) battery, and 5) a member urinating on Mitchell's food. Mitchell has properly reported these racial attacks to Local 157, but Local 157 has failed and refused to take appropriate remedial action, and has instead retaliated against Mitchell.

## II. FACTUAL ALLEGATIONS

1. Mitchell joined Local 157 in 2003 and entered its apprenticeship program. Mitchell has successfully completed the apprenticeship program, including course work at Ivy Tech, and is scheduled to become a journeyman in September 2008.

2. Mitchell is African American.

3. Local 157 is a local labor union of the Plumbing and Pipe Fitting Industry of the United States and Canada AFL-CIO. It is headquartered in Terre Haute, Indiana. Local 157 is a large local union, with approximately 1,800 members, but Local 157 has very few African American members.

4. Mitchell is a member in good standing with Local 157. He is entitled to all benefits and protections which are privileges of membership in Local 157, including all protections contained in Local 157's Laws and By-Laws.

### Incidents While Working for Sycamore Engineering at Pfizer Plant

5. In approximately December 2006, Mitchell was working as an apprentice for a contractor named Sycamore Engineering. He was referred to this job through Local 157. He was performing his work at the Pfizer plant in Terre Haute, Indiana.

6. Shortly after he started this job, Mitchell was working with a caucasian

member of his union, a journeyman, who told Mitchell to find a rope for him. When Mitchell found this rope, the rope was tied into a noose. Mitchell picked it up. The caucasian member was standing behind him and when he say Mitchell with the noose, stated, "Oh, you found the rope that was meant for you" and then began laughing.

7.      At first, Mitchell was afraid to report this member for the noose, but this same caucasian journeyman made racist remarks to another African American apprentice working at the same job site. That African American complained to the job supervisor, who called Local 157 to investigate. Local 157's business manager, Mr. Pleasant was called to meet with the African American member who complained of race discrimination. That person told Mr. Pleasant that he had been discriminated against and also told Mr. Pleasant that Mitchell had been given a noose by the same caucasian member. Mr. Pleasant called Mitchell to an interview and Mitchell confirmed to Mr. Pleasant that the caucasian coworker had given him a noose.

8.      Local 157 initially responded to Mitchell's report about the noose by simply moving Mitchell to work on another crew. Local 157 did nothing to discipline its racist member who made the noose and made the racist remarks to the other African American employee. Other caucasian Local 157 members learned that Mitchell had reported the noose incident. One confronted Mitchell and called him a "nigger." Mitchell contacted Mr. Pleasant again and reported this member for the racial slur. Mr. Pleasant came to the Pfizer job site again and interviewed Mitchell, but again took no action against the racist member.

9.      Instead of taking appropriate action to discipline these caucasian union members who were committing hostile racist acts against Mitchell and the other African

American apprentice, Mr. Pleasant instead pulled Mitchell and the other African American apprentice from the Sycamore Engineering job at the Pfizer site and made them transfer to a different job. No action was taken to disicpline the offending caucasian members who were racially harassing Mitchell and the other African American apprentice. Local 157 did nothing to remedy the hostile environment created for Mitchell within his own union.

### *Incidents While Working for Babcock & Wilcox at Duke Energy Plant*

10. Local 157 referred Mitchell to work for a company called Babcock & Wilcox (hereinafter "B & W") at the Duke Energy plant in Cayuga, Vermillion County, Indiana. Mitchell worked for B & W as an apprentice pipefitter from on or about June 4, 2007 until July 12, 2007.

11. Mitchell was terminated by B & W on July 12, 2007.

12. Just days before his wrongful termination, on July 7, 2007, Mitchell made race discrimination and racial harassment complaints to B & W management based upon the actions of coworkers. Initially, Mitchell reported a caucasian coworker, a fellow Local 157 member, that repeatedly used the word "nigger" to Mitchell in conversation. Mitchell was offended and reported the coworker to B & W managers and Mitchell's union steward from Local 157. The Local 157 steward tried to pressure Mitchell from making the complaint. One of the B & W managers, Mr. Armstrong, promised Mitchell that the offending coworker would be terminated.

13. After this meeting, Mitchell returned to work. When he took his lunch break, Mitchell found the his lunch box had been opened and someone urinated on his lunch. Additionally, the word "nigger" was written on the table right in front of Mitchell's

lunch box. Mitchell reported these acts of racial discrimination and harassment to the same B &W managers. It was Mitchell's fellow Local 157 members who committed these additional acts of racial harassment.

14. In response to these racial attacks on Mitchell, B & W management, through a Mr. Rowe, instructed Mitchell to go home. Mitchell was told the work place there was not safe for him and told that he would be sent home with pay until further notice. Mitchell's Local 157 representatives did nothing to help Mitchell and did not investigate or discipline the offending Local 157 members.

15. B & W asked Mitchell to meet with management members on July 11, 2007. At this meeting, Mitchell was told by a Mr. Robertson, the Human Resources manager, that Mitchell would not have any more problems at work, but that B & W was returning to work the Caucasian coworker who made the racial slurs.

16. Mitchell was upset about B & W's refusal to take action, but reported to work, as instructed, on July 12, 2007. Mitchell did bring with him the lunch box that had been urinated in and asked B & W management to meet with him again, and to again inspect the lunch box. Additionally, a different Caucasian coworker, also a Local 157 member, battered Mitchell when he first returned to work, throwing a shoulder into Mitchell. B & W management continued to refuse to take any action or assist Mitchell. Mitchell went back to his vehicle to put the lunch box in the car. At the car, Mitchell took a cell phone and attempted to make a call the overall plant supervisor, Mr. Burgess, to report the race discrimination and retaliation. Mr. Burgess works for Duke Energy, not B & W.

17. Immediately, B & W fired Mitchell. On an "employment/termination

record," B & W described its reason for terminating Mitchell as "violation of job site rules conducting personal business on company time."  B & W also marked that Mitchell was fired for "insubordination."  The "personal business" Mitchell was conducting was reporting racial discrimination, harassment and retaliation.

18. Local 157 refused to grieve Mitchell's wrongful termination and did nothing to protect him from the caucasian members' racial harassment and violence. Mitchell definitely reported to Local 157 the acts of racial discrimination and harassment committed against him by fellow members, but Local 157 took no action, either at the job site, or in the form of union discipline.  Mitchell, the victim of this racism, is the only one who lost his job.

19. By way of this Complaint, Mitchell seeks to vindicate his rights and the rights of other African Americans, to fair and equal opportunity in employment and union membership.

20. Mitchell is seeking any and all available damages, equitable relief and injunctive relief to remedy Local 157's acts of discrimination and retaliation.

### *III. JURISDICTION AND VENUE*

21. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1981.  The Court has pendent jurisdiction over Mithcell's state law breach of contract claim.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the unlawful conduct alleged herein was and is now being committed in the Southern District of Indiana.

### *IV. PARTIES*

23. At the time of his wrongful termination, Mitchell was domiciled in and resided in Terre Haute, Vigo County, Indiana.

24. Local 157 is a labor organization located in Terre Haute, Vigo County, Indiana.

### V. STATEMENT OF CLAIMS

#### A. RACE DISCRIMINATION CLAIMS UNDER 42 U.S.C. § 1981

25. Mitchell alleges and incorporates herein by reference paragraphs 1 through 20 above.

26. Mitchell has a contractual relationship with Local 157. The Laws and By-Laws between Mitchell, a member, and Local 157, his local union, are a contract.

27. Local 157's discriminatory actions have violated Mitchell's rights which are protected by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

28. Specifically, Mitchell was treated in a disparate manner in the terms, conditions and privileges of his union membership with Local 157 as compared to other similarly situated caucasian members. Mitchell was discriminated against and subjected to adverse union actions (forced transfers from job sites). Additionally, Mitchell was discriminated against by Local 157 members and Local 157 failed and refused to take appropriate remedial action.

29. Local 157 retaliated against Mitchell for complaining to Local 157 leadership his caucasian fellow union members' acts of discrimination, harassment and retaliation.

30. As a direct and proximate result of Local 157's discriminatory and

retaliatory practices, Mitchell has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

31. Local 157 has knowingly and wrongfully ignored Mitchell's complaints of serious racial attacks made against him by fellow members. Local 157 has allowed the local union to become and remain a hostile environment for Mitchell.

32. By way of this Complaint, Mitchell specifically alleges that Local 157 intentionally and/or with reckless disregard, discriminated against him in the terms, conditions and privileges of his union membership on the basis of his race. As a direct result of this discrimination, Mitchell has suffered substantial damages.

33. Mitchell is seeking from Local 157 all available damages under 42 U.S.C. § 1981, including all available compensatory and punitive damages, attorney's fees, expenses and costs, and any and all other equitable relief.

### B. Breach of Contract Claim Against Local 157

34. Mitchell alleges and incorporates herein by reference paragraphs 1 through 20 above.

35. As stated above, Mitchell has a contractual relationship with Local 157. The Laws and By-Laws between Mitchell, a member, and Local 157, his local union, are a contract. That contract makes many promises to Mitchell, as condition of his membership, that his union, Local 157, will protect him, help him secure employment, will assist him whenever possible and defend him, and will work together as a unit without prejudice toward any member.

36. Local 157 has breached its contractual obligations to Mitchell to protect

him, assist him, work without prejudice toward him. Instead, Local 157 has allowed caucasian members to racially discriminate and harass Mitchell. Rather than assist Mitchell to protect him from these racial attacks, Local 157 has refused to take remedial action and, in some cases, retaliated.

37. Mitchell has been harmed as a result of Local 157's breach of its contractual obligations toward him. He seeks all available damages to remedy this breach.

### *PRAYER FOR RELIEF*

WHEREFORE, plaintiff, Baron D. Mitchell, requests the following relief:

1. That the Court issue a declaratory judgment deeming the actions of Local 157 as violations of Mitchell's rights under the Civil Rights Act of 1866;

2. That the Court enjoin and restrain Local 157 and all other persons acting on its behalf from engaging in such unlawful and discriminatory practices as set forth in this Complaint;

3. That the Court enter judgment in favor of Mitchell and against Local 157 for all lost wages and benefits, including back pay and front pay, that the Court determines Mitchell lost as a result of Local 157's unlawful conduct, together with all available pre-judgment interest;

4. That the Court enter judgment in favor of Mitchell and against Local 157 for all available compensatory damages, including, but not limited to, damages for pecuniary losses, damages for humiliation, career disadvantage, loss of enjoyment of life, mental and emotional stress and anguish, and future lost earnings, all together with pre-judgment interest;

5. That the Court order Local 157 to pay to Mitchell punitive damages;

6. That the Court award to Mitchell his reasonable attorneys fees, costs and expenses;

7. That the Court award any and all such other and further equitable relief as may be appropriate to fully redress the deprivation of Mitchell's rights, to prevent their reoccurrence in the future and to protect other Local 157 members from such unlawful behavior.

> HUNT, HASSLER & LORENZ LLP
> 100 Cherry St.
> P.O. Box 1527
> Terre Haute, Indiana 47808-1527
> (812) 232-9691
>
> By _____
> Robert P. Kondras, Jr.
> Attorney No. 18038-84
> Attorney for Plaintiff

## REQUEST FOR TRIAL BY JURY

Comes now plaintiff, Baron D. Mitchell, by his counsel, and hereby requests a trial by jury, on all issues which may be tried to a jury.

> HUNT, HASSLER & LORENZ LLP
> 100 Cherry St.
> P.O. Box 1527
> Terre Haute, Indiana 47808-1527
> (812) 232-9691
>
> By _____
> Robert P. Kondras, Jr.
> Attorney No. 18038-84
> Attorney for Plaintiff