UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BARON D. MITCHELL,                       ) | | |
|     *Plaintiff*,                            ) | | |
|                                                   ) | | |
|   vs.                                           ) | | 2:08-cv-0230-JMS-WGH |
|                                                   ) | | |
| PLUMBERS AND STEAMFITTERS LOCAL ) | | |
| UNION NO. 157 and SYCAMORE       ) | | |
| ENGINEERING, INC.,                       ) | | |
|     *Defendants*.                          ) | | |

**ENTRY ON SYCAMORE'S MOTION FOR SUMMARY JUDGMENT**

Baron D. Mitchell ("Plaintiff") brings the instant action against his labor union, Plumbers and Steamfitters Local Union No. 157 ("Local 157"), and former employer, Sycamore Engineering, Inc. ("Sycamore"), pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981. Sycamore now moves the court for summary judgment in its favor. For the reason's set forth below, Sycamore's motion is **DENIED**.

### I.     Summary Judgment Standard

Summary judgment is proper when the evidence of record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The nonmoving party, however, may not rest on mere allegations or denials in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(c). Factual disputes that are irrelevant or unnecessary to the claims before the court will not alone defeat a summary judgment motion. *Anderson*, 477 U.S. at 247-48.

Summary judgment is also proper, indeed it is mandated, when it is clear that the plaintiff will be unable to satisfy the legal requirements necessary to establish his case. *See Celotex*, 477 U.S. at 322. Under this scenario, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. The moving party is, therefore, entitled to judgment as a matter of law due to the nonmoving party's failure to make a sufficient showing on an essential element of which he carried the burden of proof. *Id.*

## II.     Statement of Material Facts

Giving Mr. Mitchell the benefit of all reasonable inferences from the evidence adduced in connection with the present motion, the Court finds that the following facts are undisputed in the record and, at least for present purposes, are accepted as true:

1. Plaintiff is an African American male. He joined Local 157 in 2003 and entered its apprenticeship program. He successfully completed the apprenticeship program and became a journeyman in approximately September 2008. (Plaintiff's First Amended Complaint ("Complaint") ¶ 1, 2).

2. In late 2006 and early 2007, Plaintiff was employed by Sycamore as an apprentice

      pipefitter to work on a project for Pfizer & Company ("Pfizer") in Terre Haute, Indiana. Plaintiff was referred to this job through Local 157. (*Id.* ¶ 5).

3. During that same period, Mike Burt and Dan Lindsey were also employed by Sycamore at the Pfizer job site. Mr. Burt was the Local 157 Union steward, and Mr. Lindsey was a supervisor at the Pfizer job site. (Deposition of J.D. Smothers ("Smothers Dep.") at 41).

4. Mr. Lindsey did not have the authority to hire, terminate, transfer, demote, or promote another employee. (January 12, 2010 Affidavit of Thomas T. Dinkel). If Mr. Lindsey thought an employee should be fired, he would have had to ask Sycamore's field operations manager, J.D. Smothers, for permission. (Smothers Dep. at 19).

5. Shortly after he started at the Pfizer job site, Plaintiff worked a night shift with Mr. Burt and Mr. Lindsey. They told Plaintiff that they needed him to go and get a rope. When Plaintiff picked up the rope he had been asked to retrieve, he saw that it had been tied into a noose. After Plaintiff brought the rope to Mr. Burt and Mr. Lindsey, Mr. Lindsey laughed and said, "Aww, you got the rope that was meant for you." (Deposition of Baron Mitchell ("Plaintiff Dep.") at 46-48).

6. Plaintiff did not perceive this comment as being made in jest or in a joking sort of way. (*Id.* at 48).

7. Mr. Burt was the individual who tied the rope into a noose. (Deposition of Burt ("Burt Dep.") at 30).

8. In December 2006, Plaintiff had a conversation with Clarence Bell, another African American working at the Pfizer job site. Mr. Bell told Plaintiff that Mr. Lindsey had been saying Mr. Bell had a "ghetto car . . . what niggers drive." Plaintiff told Mr. Bell

about the incident he had with Mr. Burt and Mr. Lindsey and the noose. (Plaintiff Dep. at 50-51).

9. On December 9, 2006, following his conversation with Plaintiff, Mr. Bell called Joe McDowell and told him that he was upset about some comments made on the job site. Mr. McDowell relayed the information to Mr. Smothers on December 11, 2006. (J.D. Smothers' Written Summary of Baron Mitchell Investigation ("Exhibit 1") at 1).

10. On December 11, 2006, Mr. Smothers called Mr. Bell into his office. Mr. Bell told Mr. Smothers about the comments Mr. Lindsey had been making about him and his car. He also informed Mr. Smothers that someone had hung a small noose from the rearview mirror of one of the job site's vehicles. Finally, Mr. Bell told Mr. Smothers about the incident Plaintiff had with Mr. Burt, Mr. Lindsey, and the noose. (*Id.*).

11. After speaking with Mr. Bell, Mr. Smothers called Plaintiff into his office to discuss the noose incident. Mr. Smothers asked Plaintiff why he had not reported the incident, but Plaintiff "didn't really have an answer." (Smothers Dep. at 37-38).

12. Mr. Smothers then convened a meeting of all Sycamore supervisors at the site: Mr. Lindsey, Ed Maesch, John Scioldo, Steve Decker, and B.J. Sedletzeck. Mr. Burt was also present as the Local 157 steward. Smothers told the men that Mr. Bell and Plaintiff had made complaints about nooses and racist comments and that such behavior would not be tolerated. (*Id.* at 41; Exhibit 1 at 1-2).

13. Shortly thereafter, Sycamore distributed a policy statement prohibiting racial harassment, which was signed by every employee at the site. (Exhibit 1 at 2; Sycamore Engineering, Inc. Harassment Policy ("Exhibit 2")). Sycamore also distributed a statement outlining

4

its equal employment opportunity policy. (Exhibit 1 at 2; Sycamore Engineering, Inc. Equal Employment Opportunity Policy ("Exhibit 3")).

14. Sycamore did not have an anti-harassment policy or a policy instructing employees how to report harassment at the time Plaintiff and Bell complained of racial harassment. (Deposition of Thomas T. Dinkel ("Dinkel Dep.") at 7-11).

15. Smothers also contacted the business manager of Local 157, Mike Pleasant ("Pleasant"), to apprise him of the situation at the Pfizer job site and to inform him that Sycamore would be requiring all employees to sign the policy statement prohibiting racial harassment. (Smothers Dep. at 56).

16. Smothers never asked Lindsey if he had made racially inappropriate comments to Plaintiff or asked him to retrieve a noose. (Deposition of Lindsey ("Lindsey Dep.") at 22-23). Lindsey kept the position of supervisor and was not disciplined. (Smothers Dep. at 51).

17. After the meeting between Smothers and the supervisors, Plaintiff's coworkers were mad at him because they thought he was trying to get Mr. Lindsey fired. They were "running around dancing and saying 'ooga booga,' and trying to act funny with [Plaintiff]." Then Plaintiff's immediate foreman, Edward Nash, asked for Plaintiff to be transferred off of his crew, and Plaintiff was transferred to a different crew. (Plaintiff Dep. at 51).

18. On December 19, 2006, Plaintiff informed Mr. Smothers that Mr. Burt had called him a "nigger" when he walked by. Mr. Smothers asked Plaintiff if anyone witnessed Mr. Burt making the racial slur, and Plaintiff said no. Mr. Smothers called Mr. Pleasant and asked him to come to the job site. (Smothers Dep. at 58-60; Exhibit 1 at 2).

19. Plaintiff told Mr. Pleasant what had happened. Mr. Pleasant told Plaintiff that he would like for him to try and stay on the job and just ignore Mr. Burt and Mr. Lindsey. (Plaintiff Dep. at 64).

20. At some point, Mr. Burt was called into the meeting. Mr. Smothers cannot remember whether Mr. Burt denied making the racial slur. (Smothers Dep. at 61).

21. Mr. Smothers told Mr. Burt and Plaintiff to "shake hands and let's get this over with and behind us and go back to work and act like adults." Mr. Burt was not disciplined. (*Id.* at 63-64).

22. After the meeting, Mr. Smothers advised Plaintiff that he could arrange to have Plaintiff transferred to another Sycamore project at Union Hospital in Terre Haute, Indiana. (Smothers Dep. at 66). Plaintiff declined and stated that he did not think he should be the one getting punished. (Plaintiff Dep. at 57-58). However, Plaintiff agreed to the transfer a few days later because the situation at the Pfizer job site was "stressful." (Smothers Dep. at 66-67).

23. Mr. Smothers never considered transferring Mr. Burt and/or Mr. Lindsey to a different job site. (*Id.* at 71-73).

24. Plaintiff's transfer was effective for the pay period beginning December 17, 2006. No change in hourly rate or fringe benefits to Plaintiff occurred as a result of the transfer. (November 12, 2009 Affidavit of Thomas T. Dinkel ("Nov. Dinkel Aff.") ¶ 3).

25. From January 2007 to March 2007, Plaintiff worked no overtime and many weeks worked fewer than a full forty hours at the Union Hospital job site. During that same period, Mr. Burt and Mr. Lindsey worked a significant amount of overtime at the Pfizer

job site. (Dinkel Dep., Exhibits 4, 6).

26. Plaintiff was employed by Sycamore until March 16, 2007, when Sycamore completed a phase of its work at the Union Hospital site and laid off employees assigned to that phase. (Nov. Dinkel Aff. ¶ 3).

27. Since being laid off on March 16, 2007, Plaintiff has only worked for Sycamore on one occasion, for a total of 66.5 hours. (Dinkel Dep., Exhibit 6). Mr. Burt and Mr. Lindsey have both worked extensively for Sycamore since the Pfizer job ended. (*Id.*, Exhibits 4, 5).

28. Sycamore laid off employees assigned to the Pfizer job site on March 4, 2007. (Nov. Dinkel Aff. ¶ 4).

## III. Discussion

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Section 1981 claims are evaluated under the same rubric as Title VII claims. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006). In the instant case, Plaintiff alleges that Sycamore violated Section 1981 by subjecting him to a racially hostile work environment, retaliating against him by transferring him to a less lucrative position, and treating him in a disparate manner as compared to Caucasian employees. The Court addresses each of Plaintiff's claims below.

### A. Racial Harassment

Plaintiff alleges that Sycamore employees, particularly Mr. Lindsey and Mr. Burt, created a hostile work environment through their race-based words and actions. To survive a summary judgment motion, a plaintiff alleging racial harassment must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was so severe or persuasive as to alter the conditions of the plaintiff's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004) (citing *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)). As Sycamore does not challenge that Plaintiff was subject to unwelcome harassment and that the harassment was based on his race, the Court turns to the third and fourth prongs.

#### 1. Hostile Work Environment

Plaintiff must present evidence to establish that the alleged harassment he was subjected to was so severe or pervasive as to create an abusive working environment. *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003) (quoting *Russell v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 243 F.3d 336, 342-43 (7th Cir. 2001)). This requires "both a subjective and objective inquiry, compelling the court to ask whether a reasonable person would find the environment hostile." *Robinson*, 351 F.3d at 329 (citing *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)). When evaluating the severity and pervasiveness of the harassment, the Court looks "to all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Russell*, 243 F.3d at

343 (quoting *Smith v. Sheahan*, 189 F.3d 529, 533-34 (7th Cir. 1999)). Even one act of harassment can be sufficient to establish a hostile work environment if it is egregious. *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950 (7th Cir. 2005) (citations omitted).

Plaintiff argues that the incident with the noose was so severe as to create an abusive working environment. As the Seventh Circuit has noted, "[t]he noose is a visceral symbol of the deaths of thousands of African-Americans at the hands of lynch mobs." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (citing *Williams v. N.Y. City Hous. Auth.*, 154 F. Supp. 2d. 820, 824 (S.D.N.Y. 2001)). Like the swastika or the Klansman's hood, the noose is meant to arouse fear. *Id.* (citing *Vance v. So. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1583 (11th Cir. 1993) (Fay, J. dissenting)). As stated previously, the Court must resolve conflicts in the evidence in favor of Plaintiff. Thus in the instant case, Mr. Lindsey placed the noose in this context when he told Plaintiff, "you found the rope that was meant for you." Shortly thereafter, Mr. Burt, the other individual involved in the noose incident, called Plaintiff a "nigger" to his face. These events are sufficient to allow a jury to find that the racial harassment Plaintiff suffered was severe enough to create an abusive working environment.[1]

---

[1] Sycamore cites *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421 (7th Cir. 2004), and *Williams*, 361 F.3d 1021, to support its argument that the harassment in this case was not sufficiently severe or pervasive as to create an abusive working environment. The Court agrees with Plaintiff that Sycamore's reliance on these cases is misplaced with respect to the third prong of Plaintiff's racial harassment claim, as both cases focus solely on employer liability and make no findings as to the severity or pervasiveness of the complained harassment. *See Cooper-Schut*, 361 F.3d at 426 ("Although the incidents [the plaintiff] experienced at [employer] may have been 'severe or pervasive' enough to rise to an actionable level, there is no basis for employer liability . . . ."); *Williams*, 361 F.3d at 1029 ("The district court made no findings at to the first three elements of [the plaintiff's] hostile environment claim, focusing instead on [the employer's] response to his complaint.").

### 2. Employer Liability

The standard for employer liability differs depending on whether the alleged harassment was perpetrated by a supervisor or by a coworker. *Williams*, 361 F.3d at 1029. An employer "is essentially strictly liable if the employee's supervisor created the hostile work environment." *Mason*, 233 F.3d at 1043 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763-64 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 805-06 (1998)). When the harassment was inflicted by a coworker, however, an employer is liable only if it was negligent in discovering or remedying the harassment. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). In other words, "the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Williams* 361 F.3d at 1029 (quoting *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000)).

In the instant case, Plaintiff argues that Sycamore should be held strictly liable for the harassment inflicted by Mr. Lindsey because he was a Sycamore supervisor. The term "supervisor" has special meaning within the context of a Section 1981 lawsuit. *See Phelan v. Cook Co.*, 463 F.3d 733, 783 (7th Cir. 2006) ("The term 'supervisor' has special meaning within the context of a Title VII lawsuit."). With respect to Section 1981, "[a] supervisor is someone with the power to *directly* affect the terms and conditions of the plaintiff's employment." *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (emphasis in original) (citations omitted). This includes "the power to hire, fire, demote, promote, transfer, or discipline" the plaintiff. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998). The ability to merely direct a plaintiff's work responsibilities and evaluate his work

performance does not qualify an individual as a "supervisor" for purposes of Section 1981. *Velez*, 442 F.3d at 1047 (quoting *Rhodes*, 359 F.3d at 506).

Sycamore argues that it should not be held strictly liable for the harassment inflicted by Mr. Lindsey because Mr. Lindsey did not have the power to directly affect the terms and conditions of Plaintiff's employment. To support its argument that Mr. Lindsey is not a supervisor within the meaning of Section 1981, Sycamore has put forth evidence that Mr. Lindsey did not have the authority to hire, fire, demote, promote or transfer Plaintiff. However, Sycamore's designated evidence is silent as to whether Mr. Lindsey had the authority to discipline Plaintiff. Plaintiff asserts that Mr. Lindsey did have disciplinary power over him and points to Sycamore's Equal Opportunity Policy, which states that "[e]ach supervisor has the responsibility of . . . taking action necessary to ensure that [the policy] is practiced in his or her area of supervision." Plaintiff also argues that Mr. Lindsey had the authority to transfer him because another supervisor, Edward Nash, had Plaintiff transferred off of his crew. Accordingly, the Court finds that there is a question of material fact as to whether Lindsey qualifies as a supervisor for purposes of Section 1981 liability.

In its moving brief, Sycamore states, "to the extent that a supervisor is alleged to be implicated in the so-called 'noose incident,' Sycamore is not liable because no tangible employment action resulted." (Sycamore's Moving Brief at 12). When supervisor harassment does not result in a tangible employment action, an employer may raise an affirmative defense comprising two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly and racially harassing behavior and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided

11

by the employer to avoid harm or otherwise. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. 807-08. Based on the language from Sycamore's moving brief, quoted above, it appears that Sycamore is attempting to raise such an affirmative defense. However, Sycamore does not address the two necessary elements and fails to respond to Plaintiff's argument that the affirmative defense is not applicable to this case. Accordingly, the Court declines to find that Sycamore is entitled to summary judgment on the basis of the *Ellerth*/*Faragher* affirmative defense.

Plaintiff also argues that Sycamore should be held liable for the harassment inflicted by his co-workers, including Burt, because Sycamore was negligent in remedying the harassment. In explaining an employer's duty to remedy harassment, the Seventh Circuit has stated:

> If an employer takes reasonable steps to discover and rectify the harassment of its employees . . . it has discharged its legal duty. An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made. We are not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed. The reasonableness of an employer's response depends, in part, on the gravity of the harassment alleged.

*Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001) (quoting *McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996)).

Sycamore argues that it discharged its duty because immediately after learning of Plaintiff's complaint of harassment, it initiated an investigation, informed its employees that racial harassment would not be tolerated, and distributed a written anti-harassment policy to all personnel for signed acknowledgment. However, viewing the facts in the light most favorable to Plaintiff, Mr. Smothers did not speak to the alleged harassers or any possible witnesses to the

harassment as part of his "investigation." Furthermore, just days after Mr. Smothers told the Sycamore supervisors and Mr. Burt that racial harassment would not be tolerated, Mr. Burt called Plaintiff a "nigger" to his face. When Plaintiff complained to Mr. Smothers, Mr. Smothers merely had the two men shake hands and told them to go back to work and act like adults. In light of these facts, the Court finds that a reasonable jury could find that Sycamore's corrective response to the alleged racial harassment was not reasonable and adequate under the circumstances.

Sycamore also argues that separating Plaintiff and his alleged harassers by transferring Plaintiff to a different job site was a reasonable corrective measure. The Seventh Circuit has found separating the harassed employee from his harassers to be an appropriate remedy in racial harassment cases. *See Williams*, 361 F.3d at 1030. However, it has also said:

> A remedial measure that makes the victim of [racial harassment] worse off is ineffective per se. A transfer that reduces the victim's wage or other remuneration, increases the disamenities of work, or impairs [his] prospects for promotion makes the victim worse off. Therefore such a transfer is an inadequate discharge of the employer's duty of correction.

*Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 811 (7th Cir. 2000) (quoting *Guess v. Bethlehem Steel Corp.*, 913 F.3d 463, 465 (7th Cir. 1990)). Here, Plaintiff argues that the transfer made him worse off because he did not have the opportunity to earn overtime pay at the new job site while Mr. Burt and Mr. Lindsey continued to enjoy the opportunity to obtain it. Accordingly, there is a question of fact as to whether the transfer was an appropriate remedial measure.

### B. Retaliation

Plaintiff claims that he was transferred to a less lucrative job site in retaliation for complaining about racial harassment at the Pfizer job site. To prove a claim of retaliation, a

plaintiff may use the direct method or indirect, burden-shifting method. *Moser v. Ind. Dep't of Corrs.*, 406 F.3d 895, 903 (7th Cir. 2005) (citation omitted). Under the direct method, a plaintiff must show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link between the two. *Id.* Alternatively, under the indirect method, a plaintiff must show: (1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly-situated employees who did not engage in a statutorily protected activity. *Id.* at 903–04. If a plaintiff establishes his prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for its employment action. *Id.* at 904. If the employer provides such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Id.*

In the instant case, Sycamore argues that Plaintiff cannot establish a prima facie case under either method because he did not suffer an adverse employment action. However, as discussed above, an issue of fact exists as to whether Plaintiff was made worse off by his transfer.

Sycamore attempts to avoid that issue of fact by characterizing Plaintiff's change of job site as voluntary and one that Sycamore did not know at the time would result in a reduction of overtime. But the "voluntariness" of the transfer must be viewed in light of what the Court has already determined to be an intolerable working environment. And Sycamore's professed belief that the overtime would be the same at the new job site must be viewed in light of its refusal to consider transferring Mr. Burt and Mr. Lindsey. Sycamore's characterizations are simply too fact intensive to be resolved on summary judgment.

### C. Racial Discrimination

Plaintiff also claims that he was discriminated against by Sycamore because of his race. Curiously, Sycamore does not explicitly address this claim, despite Plaintiff setting forth his allegations in his Response Brief. Perhaps Sycamore was relying on its argument that Plaintiff failed to suffer an adverse employment action. As the Court has found, however, factual disputes exist on that issue. Plaintiff's racial discrimination claim remains.

### IV. Conclusion

For the reasons set forth above, Sycamore's Motion for Summary Judgment (Docket # 52) is **DENIED**.

09/07/2010

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF only:**

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE LLP
wgroth@fdgtlaborlaw.com

Robert Peter Kondras Jr.
HUNT HASSLER & LORENZ LLP
kondras@huntlawfirm.net

Craig Morris McKee
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
cmmckee@wilkinsonlaw.com